NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0705n.06

Case No. 17-3366

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 27, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KELLEE KENDELL, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| PHOENIX HOME HEALTH CARE | ) | OHIO |
| SERVICES, LTD, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: SILER, KETHLEDGE, and THAPAR, Circuit Judges.

**SILER**, Circuit Judge. This case arises from a pay dispute between appellants, Kellee Kendell and Home Health Care Resources LLC ("Kendell"), and appellee, Phoenix Home Health Care Services, Ltd. ("Phoenix"). Kendell and Phoenix entered into a contract in 2007, whereby Kendell was to provide patient care coordination services to Phoenix. Kendell contends that the parties' written contract stands as the final and sole contract under which the parties operated, and Phoenix asserts that the parties later entered into an oral agreement that altered Kendell's pay arrangement.

Kendell appeals the district court's decisions denying her motion to amend the complaint and granting Phoenix's motion for summary judgment. We affirm the district court because the implied duty of good faith and fair dealing does not create an independent cause of action under

Ohio law, making Kendell's proposed amended complaint futile, and because Kendell is estopped from alleging that Phoenix breached the written agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Kendell and Phoenix—a home health care agency in Ohio—entered into a contract whereby Kendell would act as an independent patient care coordinator and refer home health care clients to Phoenix. The terms of the written agreement provided that Phoenix would compensate Kendell $15 per hour, and if a patient required fourteen hours or more per week of care, Kendell would be paid two hours per week for that patient. When Kendell had twenty patients or more, each additional patient would add $0.25 per hour to her pay scale, capped at $18 per hour.

Kendell asserts that this written contract controlled the parties' business arrangement, but Lilly Peng—a partial owner of Phoenix—stated that the parties entered into a second, oral contract. According to Peng, the oral agreement only guaranteed Kendell an hourly rate of $15, irrespective of the number of patients that Kendell referred. The parties agree that Kendell received a raise via oral agreement on two separate occasions—once increasing her pay to $16 per hour in 2009, and once to $17 per hour in 2011.

In 2014, Kendell notified Phoenix that it had been compensating her based on the incorrect hourly rate. Shortly thereafter, Kendell brought suit against Phoenix, alleging that Phoenix breached the parties' written agreement by failing to compensate Kendell according to the written contract's terms and, alternatively, that Phoenix was unjustly enriched. Kendell filed a motion for leave to amend the complaint in 2016, seeking to assert an additional cause of action for constructive breach of contract based on the implied covenant of good faith and fair dealing. The district court denied the motion, determining that the additional claim would prove

futile because an implied covenant accusation is not a standalone claim under Ohio law that is "separate and apart from the breach of contract and unjust enrichment claims."

Phoenix filed a motion for summary judgment. The district court granted Phoenix's motion in full, finding that—as to Kendell's breach of contract claim—Kendell was "estopped from asserting breach of the payment terms in the 2007 Agreement after accepting payment without raising the issue of breach for seven years." With regard to Kendell's unjust enrichment claim, the court granted Phoenix's motion because it found that the existence of a valid, enforceable contract precluded relief based on unjust enrichment.

Kendell now appeals the district court's decisions denying the motion to amend and granting summary judgment in favor of Phoenix, particularly the district court's ruling on the breach of contract claim.[1]

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, utilizing the Federal Rule of Civil Procedure 56(c) standard. *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).

We also review de novo the district court's denial of the motion for leave to amend because the district court found that the amendment would be futile. *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (stating that, although this court typically reviews a district court's denial of a motion to amend for abuse of discretion, "when the district court bases such a denial on the fact that the amendment would be futile, we review the decision de novo" (internal citation omitted)). Federal Rule of Civil Procedure 15(a) provides

---

[1] Kendell's briefs focus on the district court's ruling with regard to the breach of contract cause of action, and she does not appear to appeal the court's judgment on the unjust enrichment claim. Consequently, we will only analyze Kendell's breach of contract claim.

that leave to amend a complaint shall be freely given when justice so requires. Fed. R. Civ. P

15(a). In deciding whether to grant a motion to amend, courts should consider—among other

factors—futility of the amendment, an inquiry that is based on whether the amendment would

survive a motion to dismiss under Rule 12(b)(6). *See Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir.

1998).

## DISCUSSION

### I.     Motion for Summary Judgment[2]

Kendell argues that the district court erred in granting Phoenix's motion for summary

judgment for three primary reasons. First, she claims that waiver by estoppel does not provide a

basis on which summary judgment may be granted. Next, she contends that the parties' dispute

regarding which contract governs is a genuine issue of material fact, precluding summary

judgment. Finally, she argues that the facts of the parties' course of conduct are material and

disputed.

Generally, under Ohio law, estoppel bars parties "from denying a fact that has become

settled by an act of the person himself." *Mark-It Place Foods, Inc. v. New Plan Excel Realty Tr.*,

804 N.E.2d 979, 997 (Ohio Ct. App. 2004). Waiver by estoppel exists "when the acts and

conduct of a party are inconsistent with an intent to claim a right, and have been such as to

mislead the other party to his prejudice and thereby estop the party having the right from

insisting upon it." *Id.* at 1000. Thus, when a party acts in a manner that misleads another and

causes prejudice to that party, she is estopped from bringing legal claims contrary to her conduct.

*See First Fed. Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc.*, 463 N.E.2d 636, 647 (Ohio

Ct. App. 1983) (asserting that "one party will not be permitted to deny that which, by his words,

---

[2] For coherency, we will address Kendell's arguments in reverse order and begin with the appeal
of the grant of summary judgment.

his acts, or his silence (when there was an obligation to speak), he has induced a second party reasonably and in good faith to assume and rely upon to that party's prejudice or pecuniary disadvantage"). Whether estoppel precludes the relief sought hinges on whether the party's behavior is consistent with her legal position. *See Nat'l City Bank v. Rini*, 834 N.E.2d 836, 840 (Ohio Ct. App. 2005).

Here, although Kendell asserts that she and Phoenix argued about her pay throughout the course of their business dealings, she does not dispute that she affirmatively approved of her pay every two weeks for seven years and that her rate of pay over the course of those years was inconsistent with the terms of the parties' original, written contract. Kendell did not clearly contest her hourly pay rate in writing until May 2014, mere months before bringing suit against Phoenix. Thus, Kendell's conduct misled Phoenix and induced it to reasonably believe that she was being paid correctly. Her undisputed conduct was inconsistent with a legal claim for breach of the 2007 written agreement, and Phoenix would suffer economic detriment if required to pay Kendell for the amount of damages she now seeks. Consequently, justice requires Kendell's breach of contract claim to be summarily dismissed, as no genuine issue of material fact exists with regard to Kendell's acceptance of her pay without complaint over a seven-year period, and she is estopped from bringing her breach of contract claim.

With regard to Kendell's final two arguments, the parties' dispute as to whether the 2007 written contract or the oral agreement governs their relationship is not a material fact because Kendell is estopped from claiming breach of the 2007 written agreement. As previously noted, Kendell asserts that she and Phoenix consistently argued over her compensation, but she does not explain the exact nature of these disputes or how this allegation undermines her approval of payroll documents over the course of seven years. Kendell further argues that her approval of

payroll forms was her "going along to get along" and that she did not necessarily "agree with it." Phoenix reasonably interpreted Kendell's conduct, however, as approval of her pay rate.

Kendell contends that her approval of her pay was the product of economic duress or coercion because this compensation "provided [Kendell] with income without which [she] could not sustain [her] style of living." This statement does not sufficiently allege economic duress because Kendell claims no unlawful conduct by Phoenix that limited her free will. *See Blodgett v. Blodgett*, 551 N.E.2d 1249, 1251 (Ohio 1990) ("A person who claims to have been the victim of economic duress must show that [she] was subjected to a wrongful or unlawful act or threat, and that it deprive[d] the victim of [her] unfettered will." (internal citations and quotation marks omitted)). When determining whether duress stands as a valid defense to waiver of a right, courts evaluate whether the party "really had a choice; whether he had his freedom of exercising his will." *Tallmadge v. Robinson*, 109 N.E.2d 496, 500 (Ohio 1952); *see Mancino v. Friedman*, 429 N.E.2d 1181, 1186 (Ohio Ct. App. 1980). Kendell does not assert unlawful conduct by Phoenix that coerced Kendell. Economic duress does not negate Kendell's written approval of her pay.

Accordingly, no genuine issue of material fact precludes granting of summary judgment in Phoenix's favor; therefore, Kendell is estopped from bringing her breach of contract claim against Phoenix.

## II.     Motion To Amend

With regard to the district court's denial of the motion to amend, Kendell argues that the district court improperly determined that the implied covenant of good faith and fair dealing is not recognizable as an independent cause of action under Ohio law.

In the proposed additional claim, Kendell points to the 2007 written contract and alleges that, although she "dutifully, faithfully and completely performed" under the agreement, Phoenix "demonstrated bad faith, dishonesty and/or a lack of fair dealing."

Indeed, "parties to an employment contract, as with any other contract, are bound toward one another by standards of good faith and fair-dealing." *Bolling v. Clevepak Corp.*, 484 N.E.2d 1367, 1376 (Ohio Ct. App. 1984). Ohio courts typically address this implied covenant, however, as a method of contract interpretation, rather than as an independent basis for a cause of action. *See id.* ("[F]raud [or bad faith] is never presumed, and where two constructions are possible, one of which requires a finding of fraudulent intent, and the other permits a conclusion of good faith, courts never hesitate in giving effect to the latter interpretation."). Thus, "good faith is part of a contract claim and does not stand alone." *Lakota Local Sch. Dist. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996); *see Wendy's Int'l v. Saverin*, 337 F. App'x 471, 476 (6th Cir. 2009) (stating that, under Ohio law, the implied duty of good faith "does not create an independent basis for a cause of action").

Here, Kendell did not seek to add a new "breach of contract component" irrespective of her original breach of contract claim. *See Thomasville Furniture Indus., Inc. v. JGR, Inc.*, 3 F. App'x 467, 473 (6th Cir. 2001). Rather, her proposed additional claim stems from the same written contract that forms the basis for her first breach of contract claim. Thus, the proposed claim for constructive breach cannot stand alone as a valid cause of action under Ohio contract law. Her amendment would, consequently, be futile under Rule 12(b)(6).

Because Ohio law does not recognize breach of the implied covenant of good faith and fair dealing as an independent cause of action apart from a valid breach of contract claim, the district court in this case properly denied Kendell leave to amend, even in light of this court's

"liberal policy of permitting amendments." *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 937 (6th Cir.

2004).

**AFFIRMED.**